## Unger v. Ounan

*Goldman & Post*, for plaintiff.

*Edward McGlinchey*, for defendants.

FULLAM, J., June 28, 1963.—

*Findings of Fact*

1. On May 1, 1943, defendant, Thomas J. Ounan, and his then wife, plaintiff's decedent, Mary Ounan, entered into an installment purchase agreement to purchase from Mr. and Mrs. Louis Steskal a tract of approximately 18 acres of unimproved land in West Rockhill Township, Bucks County, Pa., for the sum of $800, payable at the rate of $25 per month after an initial payment of $200.

2. A few weeks later, in June of 1943, Thomas J. Ounan and Mary Ounan separated. Thereafter, Thomas J. Ounan took up residence with another woman and became the father of an illegitimate child born in June of 1945.

3. On or about October 17, 1945, defendant, Thomas J. Ounan, returned to the home where his wife was then living, and where he and his wife had lived before the separation, to obtain some clothing and personal effects which he had left there. On that occasion, he wrote in pencil in a pocket memorandum book, and left for his wife, the following note:

"Dear Mary:

"I don't know how to tell you this, I tried to tell you to-day but I couldn't. You know you are too good for me—keep the farm for yourself, sell the Packard, get your divorce it's the best thing for both of us. I would like to have a little bit of money from the sale of the Packard, go back to your Mother that's best for you. As you see I am the Father of a baby girl 4 mos. old now her name is [——].

"You would never care to be with me any longer I know after learning of it.

"Please don't be so mad at me.

"The baby looks just like me.

"God take good care of you Mary.

"As ever
"Tom

"I took my boots with me as they are no good to you."

4. By December of 1945, all of the payments required to be made for the purchase of the 18-acre tract of land mentioned above had been completed. All of the payments subsequent to June of 1943 were made by Mary Ounan. Thomas J. Ounan did not make any payments toward the purchase of this property after June of 1943.

5. On December 27, 1945, pursuant to the above-mentioned agreement, the 18-acre tract of land was conveyed to Thomas J. Ounan and Mary Ounan, his wife, as tenants by entireties. Thomas J. Ounan was not present at the settlement.

6. In May of 1949, Thomas J. Ounan instituted a divorce action against Mary Ounan in Philadelphia, but when his wife retained counsel and obtained rule for a bill of particulars and for alimony pendente lite and counsel fees, the divorce action was abandoned.

7. In connection with the divorce action, defendant, Thomas J. Ounan, was advised by his attorney that his wife would withdraw her contest of the divorce action if Thomas J. Ounan would agree to sign over the 18-acre tract mentioned above and would agree to pay alimony. Thomas J. Ounan refused to agree and did not proceed further with the divorce action.

8. Mary Ounan died on March 14, 1961.

9. Plaintiff is the sister of Mary Ounan and is executrix and residuary legatee under the provisions of her will. The will does not specifically mention the property here in question.

10. After his wife's death, defendant, Thomas J. Ounan, on May 6, 1961, married defendant, Mabel A. Ounan, the woman with whom he had been living since at least 1945, and the mother of the child mentioned above. In December of 1961, defendants conveyed the 18-acre tract in question to themselves as tenants by the entireties.

11. Mary Ounan paid the taxes on the property from at least 1944 to and including 1960. Defendants have paid the taxes on the property for the years 1961 and 1962.

12. Defendant, Thomas J. Ounan, has never made any attempt to conceal his whereabouts from Mary Ounan. He has resided in the same block on the same street continuously since 1943, and his address was

either actually known by, or readily available to, Mary Ounan at all times.

13. Some time after the separation in 1943, Mary Ounan instituted nonsupport proceedings against defendant, Thomas J. Ounan, in the Municipal Court of Philadelphia. Pursuant to a notice from that court, both Mary Ounan and defendant, Thomas J. Ounan, attended a conference with a member of the staff of the court. No order of support was entered, and no further proceedings took place.

14. The evidence in this case does not provide any basis for a finding as to the source of the funds used by Mary Ounan in completing the purchase of the property and paying the taxes thereon.

15. Mr. and Mrs. Steskal, the original vendors of the property, are deceased.

### Discussion

The record in this case does not justify the granting of any equitable relief to plaintiff. While it has never been entirely clear just what relief plaintiff is seeking or believes herself entitled to, it is clear that she has not made out a case.

The contention that the handwritten note was sufficient to divest defendant of any interest in the property, and to prevent the creation of a tenancy by the entireties, cannot be accepted. Even assuming that the vague reference in the note to "the farm" sufficiently identifies the subject property, and overlooking the obvious informalities of the instrument, the fact remains that title was taken in the names of both parties several months after the note incident. The agreement of sale, assigned or unassigned, merged into the conveyance. Moreover, the chancellor is satisfied that neither party ever regarded the note as constituting an actual assignment of the husband's interest in the property, but rather as a recommendation for a proposed property settlement. Even if we disregard the

persuasive testimony of Thomas J. Ounan* as to subsequent conversations and negotiations involving the 18-acre tract, it seems reasonably clear that decedent did not regard it as her sole property. It is significant that her will specifically disposes of other real estate and detailed items of personal property but does not mention the 18-acre tract in controversy. Her own lawyer, who had represented her in the divorce action and who prepared her will, testified that he had no knowledge of the existence of the 18-acre tract until long after decedent's death.

The suggestion that the taking of title in joint names was inadvertent and that the deed should, therefore, be reformed, is likewise unavailing on this record. In the first place, the grantors in the conveyance in question have not been made parties and are not represented in the action. In any event, no attempt was made to prove what occurred at the settlement. There is simply no evidence which would justify reformation of the deed, even if that were possible in this action.

One of the several alternative prayers for relief set forth in plaintiff's complaint is apparently based upon a theory of constructive trust. This is, indeed, a novel concept in an entireties situation. However, it is unnecessary to consider the obvious legal difficulties involved, in view of the complete lack of proof on the subject. The same observations may be made with respect to any possible claim for damages on the basis of unjust enrichment or for an accounting.

It is impossible to tell from this record whether plaintiff's decedent paid any of her own funds toward the acquisition of the 18-acre tract. If so, the amount is entirely conjectural. The down payment of $200, and perhaps the first one or two monthly installments of

---

* Thomas J. Ounan was held to be a competent witness for several reasons, including the fact that he was called as on cross-examination by plaintiff.

$25, were paid from joint funds, while the parties were still living together. From the wording of certain averments in defendant's answer in the present case, it is possible to infer that defendant did not support his wife after the separation; plaintiff presented hearsay testimony to the same effect. There was also testimony that decedent was employed after the separation, although the extent of her earnings is not disclosed.

On the other hand, defendant testified, without contradiction, that he permitted decedent to retain and use several hundred dollars worth of savings bonds which had been purchased from his earnings, and that he also turned over to her two automobiles. And, as noted above, decedent never obtained a support order against defendant.

Plaintiff testified that on several occasions she observed decedent make payments to the Steskals for the property in question. However, the amount is not disclosed, and no record evidence of payments was produced. If all of the monthly payments had been paid when due, the purchase would have been completed in June of 1945. However, it is at least a reasonable inference that the purchase was not completed until December of 1945, when the deed was executed and recorded; it may be significant that the incident of the husband's note, suggesting the sale of the Packard automobile, occurred in October of that year. On the present record, it is entirely possible that the total purchase price was paid from the joint funds of the parties, the proceeds of the husband's savings bonds and the proceeds of the husband's car.

And finally, plaintiff is barred by laches. It is too late now, long after the grantors have died, to attempt to reform a conveyance made 17 years ago. If taking title in joint names was, in fact, the result of a mutual mistake, it is unfortunate that decedent did nothing during the remaining 16 years of her lifetime to correct

the error. To grant relief under any theory other than reformation of the deed would be equivalent to imposing retroactively an order for support, entering judgment thereon and issuing execution against the husband's interest in entireties property. Decedent might have been able to accomplish this during her lifetime, but she did not choose to do so; her executrix cannot now do it for her.

### Conclusions of Law

1. From and after December 27, 1945, and at the time of the death of Mary Ounan on March 14, 1961, the real estate in dispute was owned by Thomas J. Ounan and Mary Ounan, his wife, as tenants by the entireties.

2. Upon the death of Mary Ounan on March 14, 1961, defendant, Thomas J. Ounan, became the sole owner of the said real estate by operation of law.

3. Plaintiff's complaint in this action should be dismissed.

### Decree Nisi

And now, June 28, 1963, it is ordered, adjudged and decreed that, unless exceptions be filed within 20 days from this date, the complaint shall be dismissed, at plaintiff's cost, and judgment entered in favor of defendants.

### Opinion Sur Exceptions

FULLAM, J., October 25, 1963.—Plaintiff has filed 13 exceptions to the adjudication and decree nisi of the chancellor. However, seven of the so-called "exceptions" refer merely to various isolated sentences or paragraphs of the chancellor's discussion of the issues, and thus do not comply with Pa. R. C. P. 1518(a), which limits the scope of exceptions to rulings on objections to evidence, findings of fact, conclusions of law, the decree nisi and the failure or refusal to find any matter of fact or law substantially as requested. Exceptions

numbered 3, 4, 5, 6, 7, 8 and 9 are all defective in this respect and need not be considered.

The first exception relates to finding of fact no. 7, which reads as follows:

"7. In connection with the divorce action, the defendant Thomas J. Ounan was advised by his attorney that his wife would withdraw her contest of the divorce action if Thomas J. Ounan would agree to sign over the 18 acre tract mentioned above and would agree to pay alimony. Thomas J. Ounan refused to agree, and did not proceed further with the divorce action."

This finding of fact is based upon the testimony of Thomas J. Ounan, which the chancellor found credible and which was not impeached by cross examination or by contrary evidence. It does not, as plaintiff's present argument seems to suggest, constitute a finding that the settlement proposal emanated from decedent. Whether Mr. Ounan's lawyer in the divorce action was relaying a settlement proposal which he had received from decedent, or whether he was suggesting that Mr. Ounan should initiate such a proposal, or whether he was merely expressing a prediction as to what decedent might agree to, is imaterial insofar as the then state of mind of Thomas J. Ounan is concerned. The incident in question, which is itself inferentially supported by the record in the divorce case, tends to corroborate the interpretation of the handwritten note adopted by the chancellor. This exception is overruled.

Exception no. 2 relates to finding of fact no. 14, which reads as follows:

"14. The evidence in this case does not provide any basis for a finding as to the source of the funds used by Mary Ounan in completing the purchase of the property and paying the taxes thereon."

Because of the negative wording of the chancellor's finding, which is, in reality, a mixed finding of fact and conclusion, we interpret plaintiff's present exception as

attacking the failure to find that decedent completed the purchase of the land with her own separate funds. With respect to payments subsequent to the separation of the parties, there is no direct evidence in the record as to any such payments. From the fact that the vendors ultimately conveyed the property, we may infer that the balance of the purchase price was, in fact, paid by someone; and from the fact that Thomas J. Ounan admits that he did not make any payments after the separation and that he was not supporting his wife, it is possible to draw the inference that decedent herself supplied the funds to complete the purchase. On the other hand, as noted by the chancellor, it is also possible on this record to draw the inference that the balance of the purchase price was obtained from Thomas J. Ounan's savings bonds and from the sale of Thomas J. Ounan's automobile or automobiles. We agree with the chancellor that plaintiff has not sustained the burden of proof on this issue. It should also be noted that a contrary conclusion would not affect the outcome in any event. The second exception is overruled.

Exceptions 10, 11, 12 and 13 relate to the conclusions of law and decree nisi; we agree with the chancellor's conclusions, and, accordingly, all of these exceptions will be overruled.

The agreement of sale naming decedent and her husband as purchasers made them the owners, as tenants by entireties, of an equitable interest in the real estate. The entireties tenancy was not destroyed by any subsequent event or combination of events. The husband's desertion did not have that effect. The handwritten note did not have that effect; it was not a present conveyance or assignment, but merely a suggestion or proposal as to the disposition of their assets. Whatever may have been the effect of the note, the fact remains that legal title to the property was thereafter taken in the joint names of husband and wife, and remained in joint

names until the death of the wife 16 years later. On the entire record in this case, the only possible conclusion is that defendant, Thomas J. Ounan, became the sole owner of the property, as surviving tenant by the entireties.

### Final Decree

And now, to wit, October 25, 1963, for the reasons set forth in the foregoing opinion, all of plaintiff's exceptions to the adjudication and decree nisi are overruled and dismissed, and judgment is entered in favor of defendants.